1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   BRENT J. MORROW,

11                    Plaintiff,                    CASE NO. 2:16-CV-00131-DWC

12        v.                                        ORDER ON PLAINTIFF'S
                                                    COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
                     Defendant.
15

16        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the

17   denial of Plaintiff's applications for Disability Insurance Benefits ("DIB"). The parties have

18   consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R.

19   Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

20   United States Magistrate Judge, Dkt. 4.

21        After reviewing the record, the Court concludes Administrative Law Judge ("ALJ")

22   Laura Valente did not err in evaluating the opinions of two of Plaintiff's examining

23   psychologists and neurologists and one non-examining psychological consultant. The ALJ also

24   did not err by discounting Plaintiff's subjective testimony, discounting the statements and

1  testimony of four lay witnesses, and finding Plaintiff could perform jobs existing in significant

2  numbers in the national economy. Therefore, this matter is affirmed pursuant to sentence four of

3  42 U.S.C. § 405(g).

4  ## PROCEDURAL AND FACTUAL HISTORY

5  On March 29, 2010, Plaintiff filed an application for DIB. *See* Dkt. 7, Administrative

6  Record ("AR") 263.  Plaintiff alleges he became disabled on October 1, 2008 due to a stroke, a

7  blocked artery, high cholesterol, and high blood pressure. *See* AR 263, 404.  Plaintiff's

8  application for DIB was denied upon initial administrative review and on reconsideration. *See*

9  AR 131-32. ALJ Valente held the first hearing on September 6, 2011, at which Plaintiff,

10  represented by counsel, appeared and testified. *See* AR 30. The ALJ then held two supplemental

11  hearings on March 6, 2012 and April 24, 2012, at which a consulting medical expert and a

12  vocational expert testified, respectively. AR 68, 111. On May 24, 2012, the ALJ found Plaintiff

13  was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act.

14  AR 24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council

15  on January 16, 2013, making that decision the final decision of the Commissioner of Social

16  Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481.

17  On February 6, 2013, Plaintiff filed a Complaint seeking judicial review of the

18  Commissioner's final decision. On July 18, 2013, the Hon. Brian A. Tsuchida entered a

19  stipulated remand order, reversing and remanding the case to the Commissioner for further

20  administrative proceedings. *Morrow v. Colvin I*, 2:13-cv-00216-BAT, Dkt. 18 (W.D. Wash., July

21  18, 2013). ALJ Valente held a fourth hearing on February 5, 2014, and issued a new decision on

22  June 9, 2014, again finding Plaintiff was not disabled within the meaning of Sections 216(i) and

23

24

223(d) of the Social Security Act. AR 718, 727. On January 28, 2016, Plaintiff filed a second Complaint in this Court seeking judicial review of the Commissioner's decision on remand.

Plaintiff argues the second denial of benefits should be reversed and remanded for an immediate award of benefits, or, in the alternative, for further proceedings, because the ALJ: 1) improperly rejected the opinions of three of Plaintiff's physicians; 2) improperly discounted Plaintiff's testimony; 3) improperly rejected the testimony of four lay witnesses; 4) erred in finding Plaintiff was capable of performing his past relevant work; and 5) erred in finding Plaintiff capable of other work at Step Five of the sequential analysis. Dkt. 9, pp. 1-2.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

The ALJ found Plaintiff had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, with occasional postural restrictions and frequent balancing. AR 708. The ALJ also found Plaintiff: had sufficient concentration to understand, remember, and carry out detailed and complex tasks with specific vocational preparation ("SVP") levels up to four; could maintain concentration and pace in 2-hour increments for detail and complex tasks with SVPs up to 4, with usual and customary breaks

throughout an 8-hour workday; and was capable of making workplace decisions and using judgment as would be required for detailed and complex tasks with SVPs up to 4. AR 708-09. Plaintiff argues this RFC finding erroneously excludes additional limitations opined to by Plaintiff's examining and consulting physicians, and testified to by Plaintiff and four lay witnesses.

I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence

**A.  Standard**

The ALJ has the responsibility to determine credibility and resolve ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 942 (9th Cir. 1982). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

1  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

2  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

3  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

4  157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant

5  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

6  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

7  F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

8  disregarding [such] evidence." *Flores*, 49 F.3d at 571.

9  **B.  Application of Standard**

10  1. *William Likosky, M.D.*

11  Dr. Likosky has treated Plaintiff since Plaintiff suffered a stroke in October, 2008. AR

12  681. Dr. Likosky rendered three opinions as to Plaintiff's severe impairments and their

13  associated functional limitations. AR 648, 665, 681. On November 10, 2010, Dr. Likosky

14  completed a "stroke residual functional capacity questionnaire." AR 645. On this questionnaire,

15  Dr. Likosky indicated Plaintiff was experiencing the following physical and mental symptoms

16  due to his stroke: balance problems; poor coordination; weakness; unstable walking; difficulty

17  remembering; confusion; emotional lability; and problems with judgment. AR 645. As a result of

18  these symptoms, Dr. Likosky opined Plaintiff would be unable to walk for more than one block

19  without needing rest, would be able to stand for no more than 30 minutes at one time, would be

20  able to stand and walk for less than two hours in an eight hour work day, and Plaintiff's

21  symptoms would seldom interfere with his attention and concentration. AR 646. Dr. Likosky

22  also opined Plaintiff would only be able to stoop, crouch, climb ladders, and climb stairs on an

23  occasional basis, would be able to occasionally/frequently twist, and would have significant

24

1   limitations in reaching, handling, or fingering. AR 646. Further, due to Plaintiff's cognitive

2   impairments arising out of the stroke, Dr. Likosky opined Plaintiff would be incapable of even

3   low-stress work, and would be absent from work for more than four days per month. AR 647-48.

4   Dr. Likosky reaffirmed these opinions on a second "stroke residual functional capacity

5   questionnaire" dated July 25, 2011. AR 665.

6          On December 12, 2011, Dr. Likosky prepared a narrative opinion as to Plaintiff's

7   functional limitations. Again, Dr. Likosky opined Plaintiff has been suffering from cognitive

8   impairments, as well as difficulty with stress management and endurance, since the October,

9   2008 stroke. AR 681. Dr. Likosky opined these symptoms prevent Plaintiff from sustaining work

10  activity on a regular and continuous basis. AR 681.

11         The ALJ gave little weight to Dr. Likosky's December 10, 2010 and July 25, 2011

12  opinions for six reasons:

13        ***First***, Dr. Likosky's reports that the claimant has balance problems, poor
          coordination, weakness, and unstable walking. This report, however, contradicts
14        Dr. Likosky's own contemporaneous treatment records, which consistently
          describe the claimant as appearing to appointments from March 2009 through
15        July 2012 with an intact gait and balance, preserved and symmetric deep tendon
          reflexes, intact coordination, and no signs of motor weakness or sensory loss in
16        any of his extremities ([AR 577, 579, 581, 587, 595; 1022, 1025, 1027, 1029,
          1031, 1035]). ***Second***, Dr. Likosky's statement that the claimant has memory
17        issues, confusion, and emotional lability is likewise inconsistent with Dr.
          Likosky's own treatment records, which frequently describe the claimant as being
18        fully alert and oriented during appointments, with intact memory and no unusual
          depression or anxiety ([AR 577, 579, 587, 593, 595; 970; 1022, 1025, 1027,
19        1029], etc.). Moreover, apart from a short trial of an antidepressant in December
          2009 ([AR 582]), the claimant has never undergone any mental health treatment.
20        If the claimant's mental symptoms were that frequent or severe, one would expect
          persistent complaints of depression and greater attempts to obtain treatment.
21
22        ***Third***, Dr. Likosky's opinion that the claimant can stand/walk less than 2 hours
          during an 8-hour workday is not consistent with the claimant's normal gait during
23        appointments or his ability to golf once or twice per week. ***Fourth***, Dr. Likosky's
          opinion that the claimant has manipulative limitations is not consistent with the
24        physical examinations, which show no ongoing deficits in the upper extremities

since his stroke. ***Fifth***, Dr. Likosky indicates that the claimant is incapable of even low stress jobs due to his cognitive impairments. As discussed above, however, the claimant has regularly shown intact cognition during appointments with Dr. Likosky as well as Dr. Stalsbroten. Additionally, on psychometric testing in October, 2011, the claimant showed that [he] could perform simple and some complex tasks. I note that the claimant has been able to handle the stress of traveling to foreign countries on cruises to Panama in 2011 and Europe in 2013. He also [has] been able to handle the stress of golfing once or twice per week, an activity that is cognitively demanding. While he may no longer be able to deal with the stressors and complexities of running his storage unit business on a daily basis, the overall evidence indicates that he retains the ability to deal with the stressors of performing simpler tasks (i.e., SVPs of 1 to 4) on a regular and continuing basis. This finding is consistent with the opinion of Dr. [Steven] Talmadge (a neuropsychologist) that the claimant has only mild difficulty in his ability to respond appropriately to usual work situations and to changes in a routine work setting ([AR 668-80]). ***Finally***, Dr. Likosky opines that the claimant will miss more than 4 days per month due to his impairments. Dr. Likosky, however, does not provide any explanation for such an extreme assessment. As discussed above, Dr. Likosky's own treatment records contradict his list of symptoms that he reports the claimant experiences on a persistent basis. Given such significant discrepancies, one can only view Dr. Likosky's medical source statements as accommodation opinions. While I agree that the claimant does have residual physical and cognitive limitations from his stroke, the physical examinations and cognitive test results fail to substantiate Dr. Likosky's conclusion that the claimant's limitations rise to a disabling level.

AR 713-14 (emphasis added). The ALJ discounted Dr. Likosky's December 12, 2011 narrative opinion for two of the same reasons he discounted Dr. Likosky's two previous opinions: Dr. Likosky's treatment records do not corroborate his conclusions, and Plaintiff's activities of daily living—such as going on cruises and golfing—indicate Plaintiff is capable of more cognitively demanding tasks than those opined to by Dr. Likosky. The ALJ also discounted Dr. Likosky's narrative opinion for an additional reason:

> [C]ontrary to Dr. Likosky's interpretation, Dr. Talmadge's report does not support a finding that the claimant cannot sustain work. To the contrary, it shows only that the claimant has mild to moderate deficits in cognitive functioning. While the claimant may be unable to sustain complex tasks (with SVPs of 5 or greater) on a regular and continuing basis, it does not follow that based on Dr. Talmadge's report, the claimant cannot sustain unskilled or semi-skilled tasks.

1    AR 714. Plaintiff argues these were not specific and legitimate reasons, supported by substantial

2    evidence, for discounting Dr. Likosky's opinions. The Court disagrees.

3          As a threshold matter, the only argument Plaintiff makes as to why the ALJ erred by

4    rejecting Dr. Likosky's opinions is that Dr. Likosky's treatment notes and Dr. Talmadge's report

5    are consistent with Dr. Likosky's opinions. Dkt. 9, pp. 9-10. However, Plaintiff does not address

6    any of the ALJ's other reasons for giving Dr. Likosky's opinions less than full weight. For

7    example, Plaintiff does not address the ALJ's finding that Plaintiff's normal gait and his ability

8    to golf once or twice per week was inconsistent with Dr. Likosky's opinion Plaintiff could stand

9    and/or walk less than two hours in an eight hour work day. Nor does Plaintiff address the ALJ's

10   conclusion that Dr. Likosky's opined manipulative limitations and his opinion Plaintiff would be

11   absent from work four or more days per month were offered without any explanation and are

12   inconsistent with the record. Arguments not raised with sufficient specificity in the opening brief

13   are waived. *See* Dkt. 8, p. 2 ("Subsequent sections of the opening brief *must* fully explain each

14   issue raised in the assignments of error and *must* include citations to the specific pages of the

15   administrative record and the relevant legal authority that support each argument and request for

16   relief.") (emphasis added). *See also Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006),

17   *Bisuano v. Colvin*, 584 Fed.Appx. 512, 514 (9th Cir. 2014).

18         Even if Plaintiff had not waived these arguments, the ALJ provided several specific and

19   legitimate reasons, supported by substantial evidence, for discounting Dr. Likosky's opinions.

20   First, the ALJ correctly notes Plaintiff presented with normal gait, balance, reflexes, and

21   coordination during Dr. Likosky's examinations. AR 577, 579, 581, 587, 595; 1022, 1025, 1027,

22   1029, 1031, 1035. The ALJ also correctly notes Dr. Likosky's records indicate Plaintiff

23   presented with intact memory, no unusual depression or anxiety, and was fully oriented during

24

1  appointments. AR 577, 579, 587, 593, 595; 970; 1022, 1025, 1027, 1029. The ALJ rationally

2  concluded these findings in Dr. Likosky's treatment notes were inconsistent with his opined

3  limitations in balancing, coordination, weakness, walking, memory issues, confusion, and

4  emotional lability. *See Morgan*, 169 F.3d at 601-02; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038

5  (9th Cir. 2008).

6       Second, the ALJ properly discounted Dr. Likosky's opined manipulative limitations as

7  inconsistent with notes reflecting Plaintiff did not have ongoing deficits in his upper extremities.

8  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004)

9  ("[A]n ALJ may discredit treating physician's opinions that are conclusory, brief, and

10 unsupported by the record as a whole, . . . or by objective medical findings[.]"). Likewise, the

11 ALJ noted Dr. Likosky offered no basis for his opinion Plaintiff would miss more than four days

12 of work per month due to his impairments, and the ALJ properly discounted this conclusory

13 opinion. *Id.*

14      Third, the ALJ properly discounted Dr. Likosky's opinions Plaintiff could stand or walk

15 for less than two hours in an eight hour workday, as well as Plaintiff's inability to perform even

16 low stress jobs, because these opined limitations were inconsistent with Plaintiff's physically and

17 mentally strenuous activities, such as golfing once or twice per week and taking multiple trips

18 abroad. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

19      Finally, the ALJ properly discounted Dr. Likosky's opinion by reference to the less

20 restrictive opinion from Dr. Talmadge. As discussed more thoroughly below, Dr. Talmadge

21 opined to no more than moderate limitations in Plaintiff's ability to understand, remember, and

22 complete complex instructions, mild limitations in Plaintiff's ability to understand, remember,

23 and complete simple instructions, and no limitations at all with Plaintiff's ability to interact with

24

1    the public, coworkers, and supervisors. AR 678-79. Though Dr. Likosky cites Dr. Talmadge's

2    opinion as a basis for opining Plaintiff has been incapable of work since October, 2008, Dr.

3    Talmadge's evaluation and associated opinions reflect far greater functioning than Dr. Likosky

4    suggests. AR 714. *Compare* AR 678-80 *with* AR 681. The ALJ was entitled to consider this

5    inconsistency in evaluating Dr. Likosky's opinions. *See* 20 C.F.R. § 404.1527(c)(4).

6         Plaintiff also contends other medical records corroborate Dr. Likosky's opinions.

7    Assuming these records were actually consistent with Dr. Likosky's opinion,[1] the fact remains

8    that Dr. Likosky's records also document normal or mild findings in a wide range of physical

9    and mental functional abilities. *See, e.g.*, AR 577, 579, 581, 587, 595; 1022, 1025, 1027, 1029,

10   1031, 1035. Faced with ambiguities in the record, the Court may not substitute its judgment for

11   that of the ALJ. *Batson*, 359 F.3d at 1196. The Court's inquiry under these circumstances is

12   limited to assessing whether the ALJ's interpretation of the evidence is rational; if so, the Court

13   will not disturb the ALJ's findings. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

14   ("Where the evidence is susceptible to more than one rational interpretation, one of which

15   supports the ALJ's decision, the ALJ's conclusion must be upheld.").

16        The ALJ provided specific and legitimate reasons, supported by substantial evidence, for

17   giving little weight to Dr. Likosky's opinions. Thus, the ALJ did not err.

18              2. *Steven Talmadge, Ph.D.*

19        Dr. Talmadge examined Plaintiff on October 1, 2011. AR 668. On mental status

20   examination, Plaintiff expressed he understood the purpose of the evaluation but "complained

21

22   _____

23        [1] There is some doubt on this point. Defendant argues persuasively that Dr. Likosky's
     treatment records actually demonstrate Plaintiff's conditions improved over time. Dkt. 13, p. 12.
     For example, Dr. Likosky's notes reflect Plaintiff experienced improvements in his fatigue and
24   depression as early as June, 2009. AR 578-79, 592.

1   that it should have been done a year ago when he was more obviously experiencing physical and

2   mental difficulty." AR 671.  Dr. Talmadge documented normal eye contact and intelligible,

3   coherent, and modulated speech. AR 671. Plaintiff was oriented to person, place, and

4   circumstance, though he exhibited some initial difficulty recalling the date. AR 671. He

5   exhibited a somewhat downcast mood, euthymic affect, a normal fund of information, and was

6   able to spell 'world' forwards and backwards and perform serial sevens with "relative ease." AR

7   671-72. However, Plaintiff was also "easily confused and overwhelmed when asked to explain or

8   elaborate on subtle aspects of his history or current functioning," exhibited inadequate judgment,

9   and could recall only one out of three items after ten minutes. AR 672. Dr. Talmadge also

10  administered several assessments and inventories, including the Wechsler Adult Intelligence

11  Scale ("WAIS-IV"), the Wechsler Memory Scale ("WMS-IV"), and the Trail-making Test, Parts

12  A and B. AR 673-676. The Court notes Plaintiff's performance on these various measures

13  appears mixed, as Plaintiff achieved highly variable percentile ranks across many subscores. *See,*

14  *e.g.*, AR 675.

15       Dr. Talmadge diagnosed Plaintiff with a cognitive disorder, not otherwise specified,

16  assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 47, and opined

17  Plaintiff's prognosis was poor. AR 677. Dr. Talmadge also completed a "medical source

18  statement of ability to do work related activities (mental)." AR 678. On this form, Dr. Talmadge

19  opined Plaintiff's impairments would cause moderate limitations in his ability to: understand and

20  remember complex instructions; carry out complex instructions; and make judgments on

21  complex work-related decisions. AR 678. Dr. Talmadge also opined Plaintiff would have no

22  more than mild limitations in his ability to: understand and remember simple instructions; carry

23  out simple instructions; make judgments on simple work related decisions; and respond

24

appropriately to usual work situations and to changes in a routine work setting. AR 678-79. Dr.

Talmadge did not opine to any other limitations. *See* AR 678-80. Notably, the form defines

"moderate" limitations as "more than a slight limitation . . . but the individual is still able to

function satisfactorily," and defines "mild" limitations as "a slight limitation in this area, but the

individual can generally function well." AR 678.

The ALJ gave Dr. Talmadge's opinion significant weight, and incorporated his opined

limitations into the RFC finding. AR 715. In so doing, the ALJ noted Dr. Talmadge's opinion

Plaintiff had mild limitations in his ability to understand, remember, and carry out simple

instructions, as well as Dr. Talmadge's opinion Plaintiff had no limitations whatsoever in his

ability to interact appropriately with coworkers, supervisors, and the public. AR 678-79, 715.

However, the ALJ gave little weight to Dr. Talmadge's opined GAF score for the following

reason:

> [It] appears to have considered secondary factors such as [Plaintiff's]
> psychosocial stressors, occupational problems, and history of physical
> impairments ([AR 677]). As such, I accord greater weight to Dr. Talmadge's
> assessment of mental domains, which indicate that the claimant has, at most,
> moderate deficits in mental functioning ([AR 678-79]).

AR 715.

Plaintiff does not offer any argument as to why the ALJ's rejection of Plaintiff's GAF

score was erroneous.[2] Instead, Plaintiff argues Dr. Talmadge and Dr. Likosky's opinions are

---

[2] Nonetheless, the Court finds the ALJ properly discounted Dr. Talmadge's opined GAF
score. "A GAF score is a rough estimate of an individual's psychological, social, and
occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*,
159 F.3d 1161, 1164 n.2 (9th Cir.1998). The GAF assessment is made based on either the
individual's symptoms or her functional impairments, whichever is lower. DSM-IV-TR at 32-33.
The Commissioner has determined the GAF scale "does not have a direct correlation to the
severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed.
Reg. 50,746, 50,765-766 (Aug. 21, 2000) *See also Hughes v. Colvin*, 599 Fed.Appx. 765, 766

1   consistent with one another, and both support the conclusion Plaintiff is disabled. Dkt. 9, pp. 9-

2   10. To bolster this argument, Plaintiff cites selected quotes from Dr. Talmadge's narrative

3   opinion, such as Dr. Talmadge's statement Plaintiff "is easily confused and overwhelmed when

4   asked to explain or elaborate on subtle aspects of his history and current functioning," or his note

5   Plaintiff "appears to experience difficulty retaining information in memory across brief intervals

6   of about 30 minutes."  Dkt. 9, p. 10. Dr. Talmadge's "statements must be read in the context of

7   the overall diagnostic picture he draws." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.

8   2001). Here, though Dr. Talmadge opined Plaintiff had ongoing cognitive deficits as a

9   consequence of his stroke, Dr. Talmadge's functional assessment is far less restrictive than the

10  limitations opined to by Dr. Likosky. *Compare* AR 678-80 *with* 681. Thus, while Dr. Talmadge

11  opined Plaintiff had ongoing impairments in Plaintiff's "information processing speed, auditory

12  memory, delayed memory, and executive functioning," he did not opine these impairments

13  would have any more than moderate limitations in Plaintiff's functional abilities. AR 676. *See*

14  *also* AR 678-80.

15      Plaintiff essentially argues the ALJ should have interpreted Dr. Talmadge's report in a

16  manner more favorable to his arguments. However, the ALJ properly relied on Dr. Talmadge's

17  ───────────────────────────────────

18  (9th Cir. 2015) (noting GAF scores "do[] not have any direct correlative work-related or functional limitations."). While the Social Security Administration continues to receive and

19  consider GAF scores from "acceptable medical sources" as opinion evidence, GAF scores "do not control determinations of whether a person's mental impairments rise to the level of a

20  disability[.]" *Garrison v. Colvin*, 759 F.3d 995, 1002, n. 4 (9th Cir. 2014).

        Notably, Dr. Talmadge based his opined GAF score on more than Plaintiff's mental

21  impairments; Dr. Talmadge also noted Plaintiff's severe history of physical impairments, and documented occupational problems and psychosocial stressors. Further, "[a] GAF score of 50

22  does not necessarily establish an impairment seriously interfering with the claimant's ability to perform basic work activities." *Gutierrez v. Astrue*, No. 12-cv-1390-MEJ, 2013 WL 2468344, at

23  *19 (N.D. Cal. June 7, 2013). Given the various factors unrelated to Plaintiff's functioning which appear to have been incorporated into the GAF score, the ALJ did not err by giving the score

24  little weight.

1   opinion as to Plaintiff's functional limitations, and the ALJ's interpretation of Dr. Talmadge's

2   opinion was rational. *See Thomas*, 278 F.3d at 954. The ALJ's evaluation of Dr. Talmadge's

3   opinion was supported by substantial evidence, and was not in error.

4                    3. *James Haynes, M.D.*

5           Dr. Haynes reviewed Plaintiff's medical records and testified at the March, 2012 hearing.

6   AR 73. Dr. Haynes noted Plaintiff's October, 2008 stroke was a severe impairment, and Plaintiff

7   would have ongoing concerns about vascular disease. AR 75-76. However, Dr. Haynes noted

8   Plaintiff was able to continue playing golf, travel overseas, and was ready to give a lecture out of

9   state. AR 76. Based on these activities, Dr. Haynes concluded Plaintiff had minimal physical

10  residuals from the stroke. AR 76. As for mental impairments, Dr. Haynes noted Dr. Talmadge's

11  psychological evaluation indicated Plaintiff had a cognitive disorder, not otherwise specified. AR

12  78. Dr. Haynes concluded Dr. Talmadge's testing was valid, but Dr. Haynes disagreed with the

13  conclusion that the cognitive impairments had an onset date in 2008. AR 78. Dr. Haynes noted

14  Plaintiff's functioning after the stroke, as described in the medical records, was inconsistent with

15  disabling cognitive impairments. AR 78, 83-84. Dr. Haynes noted there was no evidence

16  Plaintiff's vascular disease had worsened over time, and indicated this was inconsistent with an

17  apparent decline in Plaintiff's functioning just prior to Dr. Talmadge's examination—i.e.,

18  Plaintiff was able to golf, travel overseas, and willing to give a lecture in 2010, prior to Dr.

19  Talmadge's opinion in 2011. AR 78, 83 ("I think that we have a man who did have this episode

20  and then got back and was actually pretty functional for a while.").

21          The ALJ gave Dr. Haynes' testimony some weight, but noted Dr. Haynes did not offer an

22  opinion as to the claimant's RFC. AR 715. The ALJ also noted the Appeals Council "indicated

23  that Dr. Haynes testified that the claimant's cognitive dysfunction may have been disabling ([AR

24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1  806]). I have reviewed the March 2012 transcript . . . but I see no mention of Dr. Haynes ever

2  making such a statement." AR 716. Plaintiff argues the ALJ erred by ignoring this colloquy with

3  Dr. Haynes:

4       Q: Okay, So—and does the record—other than that evaluation, does—is there
        some other point where we could say, well the record supports that he had
5       cognitive dysfunction that would be disabling?

6       A: Just a minute, let me look here. I'm not sure how to date that. I would say
        perhaps a little bit of time before the psychological evaluation (INAUDIBLE). As
7       late as 2010 we had the lecturing in California (INAUDIBLE).

8  AR 78. The Court disagrees. A review of the quoted passage does not reflect Dr. Haynes found

9  Plaintiff's cognitive impairments were disabling; instead, Dr. Haynes indicated he was unable to

10  determine a date where Plaintiff's cognitive dysfunction *would* have been be disabling. Further,

11  Plaintiff takes this passage out of context. Shortly after offering this testimony, Dr. Haynes testified

12  the lack of any imaging reflecting Plaintiff's vascular disease had worsened over time suggested

13  Plaintiff's symptoms were more likely caused by depression secondary to his stroke rather than

14  cognitive dysfunction. AR 78, 83-84.

15       In any event, the ALJ indicated he gave more weight to Dr. Talmadge's opinion as to

16  Plaintiff's limitations, as Dr. Talmadge actually administered psychometric testing and, unlike Dr.

17  Haynes, offered a RFC finding. AR 715. This was a proper reason to give Dr. Haynes' opinion less

18  than full weight in favor of the more thorough opinion from an examining medical source. *See*

19  *Batson*, 359 F.3d at 1195.

20

21

22

23

24

1

    *4. Plaintiff's SVP Level*

2

    Plaintiff argues the ALJ failed to provide a sufficiently specific explanation of the ALJ's

3

decision to limit Plaintiff to tasks requiring a specific vocational preparation ("SVP") level of four

4

or below in the RFC.[3] Dkt. 9, p. 11. *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).

5

    An ALJ is not required to express a RFC finding in exactly the same terms as articulated

6

by a medical expert. *See Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir.

7

2010). Further, when an ALJ incorporates all of a physician's opined limitations into a residual

8

functional capacity finding, there is no error. *See id. See also Meanel v. Apfel,* 172 F.3d 1111,

9

1113-14 (9th Cir. 2000) ("Clear and convincing reasons are not required, however, when there is

10

no conflict. The record demonstrates that the ALJ accepted [the examining physician's] findings.

11

Yet [the examining physician's] meager opinion provided no basis for concluding that [the

12

claimant] was disabled.").

13

    Here, Dr. Talmadge found Plaintiff had no more than mild limitations in his ability to

14

perform simple tasks, and no more than moderate limitations in his ability to perform complex

15

tasks. AR 678-80. The ALJ found this was consistent with an ability to "understand, remember,

16

carry out, and make decisions on simple as well as semi-skilled tasks with SVPs of up to 4." AR

17

18

————————————

19

    [3] SVP is "the amount of lapsed time required by a typical worker to learn the techniques,
acquire the information, and develop the facility needed for average performance in a specific

20

job-worker situation." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1231, n. 4 (9th Cir.
2009). (*quoting Dictionary of Occupational Titles*, Appendix C, p. 1009 (4th ed.1991)). SVP 1

21

means "short demonstration only," SVP 2 means "anything beyond [a] short demonstration up to
and including 1 month," SVP 3 means "over 1 month up to and including 3 months," SVP 4

22

means "over 3 months up to and including 6 months," SVP 5 means "over 6 months up to and
including 1 year," SVP 6 means "over 1 year up to and including 2 years," SVP 7 means "over 2

23

years up to and including 4 years," SVP 8 means "over 4 years up to and including 10 years,"
and SVP 9 means "over 10 years." *Dictionary of Occupational Titles*, Appendix C, p. 1009.

24

714. However, the ALJ found Plaintiff "would not be able to sustain complex tasks with SVPs of 5 or higher." AR 715.

Under Social Security Ruling ("SSR") 00-4P, *available at* 2000 WL 1898704, at *3, a SVP of 3-4 corresponds to no more than semi-skilled work. Semi-skilled work, in turn, is:

> [W]ork which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities *which are similarly less complex than skilled work, but more complex than unskilled work.* A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568 (emphasis added). Dr. Talmadge's opined mild and moderate limitations in Plaintiff's ability to perform simple and complex tasks are consistent with this SVP restriction. *Cf. Brave v. Colvin*, 2013 WL 6490805, at *3, *9-*10 (W.D. Wash. Dec. 10, 2013) (holding an SVP of 7 was consistent with an ALJ's finding, at step two of the sequential evaluation, that the claimant's condition caused no more than mild cognitive limitations). As an SVP of four is consistent with the work restrictions articulated by Dr. Talmadge, the ALJ's interpretation of the record is rational and the ALJ did not err by finding Plaintiff was limited to jobs with an SVP level no higher than four.

II.    Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Finding Plaintiff Not Fully Credible.

**A. Standard**

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

(9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*,

885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a

credibility determination where that determination is based on contradictory or ambiguous

evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

*Tonapetyan*, 242 F.3d at 1148.

### B.  Application of Standard

Plaintiff testified to low stamina and weakness as a result of his stroke. AR 43. Plaintiff

also testified to cognitive impairments, such as slower processing speed and memory difficulties.

AR 47. As a result of these impairments, Plaintiff testified he has been unable to return to his

previously active lifestyle, which included jogging and tennis. AR 43. Plaintiff also testified to

difficulties using the telephone, filling out paperwork, and operating the credit card machine at

his former business. AR 47. Plaintiff argues none of the reasons the ALJ offered for discounting

this testimony were specific, clear, and convincing reasons supported by substantial evidence.

The Court disagrees.

1    First, the ALJ found the objective medical evidence in the record contradicted Plaintiff's

2    testimony concerning his fatigue, weakness, difficulty standing and walking, memory, and

3    information processing ability. AR 709-10. This was proper. *See Regennitter v. Comm'r, Soc.*

4    *Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). "While subjective pain testimony cannot be

5    rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

6    medical evidence is still a relevant factor in determining the severity of the claimant's pain and

7    its disabling effects." *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). Further,

8    *inconsistencies* between a claimant's testimony and the medical evidence of record, rather than a

9    mere lack of support from the medical evidence, is a clear and convincing reason, supported by

10    substantial evidence, for giving less weight to a claimant's testimony. *See Johnson v. Shalala*, 60

11    F.3d 1428, 1434 (9th Cir. 1995).

12    Here, the ALJ cited records documenting improvement in Plaintiff's physical and mental

13    symptoms. AR 709-10. For example, despite Plaintiff reporting ongoing weakness, his lower

14    extremity strength improved with time, and he consistently had intact gait and balance,

15    coordination, speech, symmetric and well preserved deep tendon reflexes, and no sensory loss in

16    extremities. *See* AR 539, 1022, 1024, 1026, 1030, 1032 1034. Further, despite reporting

17    significant fatigue and stamina deficiencies at the hearing, Plaintiff regularly denied fatigue

18    symptoms on examination. *See* AR 594, 968, 1022, 1024, 1026, 1030, 1032. Plaintiff was also

19    able to perform a wide variety of tasks on mental status examination, including serial sevens,

20    spelling 'world' forwards and backwards, recalling words, and demonstrating an adequate fund

21    of knowledge. AR 577, 579, 587, 593, 595, 970, 974; 1022, 1025, 1027, 1029. In fact, medical

22    records reflect Plaintiff had "residual mild cognitive abnormalities" in November, 2010. AR

23    1031. *See also* AR 582, 970. The ALJ properly considered these inconsistencies between

24

1  Plaintiff's testimony and the evidence contained in the medical records when assessing

2  Plaintiff's subjective symptom testimony.

3      Second, the ALJ discounted Plaintiff's testimony concerning his disabling symptoms as

4  inconsistent with Plaintiff's activities of daily living. AR 711. Inconsistencies between a

5  claimant's testimony concerning his limitations and the claimant's activities of daily living can

6  be clear and convincing reasons for discrediting a claimant's testimony. *Orn v. Astrue*, 495 F.3d

7  625, 639 (9th Cir. 2007). However, "the mere fact that a plaintiff has carried on certain daily

8  activities . . . does not in any way detract from her credibility as to her overall disability."*Id*. To

9  base an adverse evaluation of a claimant's testimony on the claimant's activities of daily living,

10  the ALJ must either explain how the claimant's activities are inconsistent with his or her

11  testimony, or must explain how the activities of daily living meet "the threshold for transferable

12  work skills." *Id.* Here, Plaintiff reported he was unable to pay attention for long, play golf, or

13  walk for more than five to ten minutes. AR 427. However, the record reflects Plaintiff continued

14  to play golf once or twice per week despite his history of stroke, which the ALJ found was both

15  physically and cognitively demanding. AR 711. *See* AR 51, 94-95, 574, 830. Further, the ALJ

16  noted Plaintiff was able to attend weekly bible study, and take international trips in 2011 and

17  2013. AR 58-60, 96. While these activities are not necessarily transferrable to a work setting,

18  they are inconsistent with Plaintiff's testimony. The ALJ properly considered them when

19  discounting Plaintiff's testimony.

20      Because the ALJ offered clear and convincing reasons, supported by substantial

21  evidence, for discounting Plaintiff's testimony, the ALJ did not err.

22

23

24

1

2

### III.    Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence in the Record

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)); *see also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce*, 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ need not cite the specific record, nor "clearly link his determination to those reasons," as long as "arguably germane reasons" for dismissing the testimony are noted  and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ considered the testimony and third party function report of the Plaintiff's wife, Denise Morrow, as well as statements from three friends of the Plaintiff: Colonel James Brix; ad Norman Erie M.D.; and Oliver Stalsbroten M.D.[4] AR 711-13. Collectively, the lay witnesses opined Plaintiff suffered from physical and cognitive limitations, including fatigue (AR 732, 742-743, 962, 964, 966), diminished reasoning skills and confusion (AR 732, 743, 833, 962, 964, 966), and memory loss (AR 744, 835, 962, 964). The ALJ accorded some weight to Mrs. Morrow, Col. Brix, and Dr. Stalsbroten, but accorded only minimal weight to Dr. Erie. AR 711-13.

---

[4] Neither party argued Dr. Stalsbroten and Dr. Erie made statements in their professional medical capacity. Rather, the two doctors have submitted statements in their personal capacities and are treated as lay witnesses for purposes of this proceeding. *See* Dkt. 13, pp. 15-16; Dkt. 9, pp. 12-13; *see also* AR 712-713, 962, 966.

1                         1. *Denise Morrow*

2         Plaintiff argues the ALJ erred by discounting Mrs. Morrow's testimony. *See* Dkt. 9, pg.

3 13. Specifically, Plaintiff takes issue with the ALJ's finding that Mrs. Morrow's testimony

4 regarding Plaintiff traveling overseas was inconsistent. *Id*. At the September 6, 2011 hearing, the

5 ALJ asked Mrs. Morrow whether Plaintiff had traveled abroad to do various types of "activities

6 and work." AR 829. Mrs. Morrow responded that Plaintiff previously worked for a volunteer

7 organization which required him to travel abroad, but he had not done so since his alleged

8 disability onset date. AR 829-830.  Mrs. Morrow finished her response stating: "he doesn't travel

9 overseas at all." AR 830. Later in the hearing, Mrs. Morrow acknowledged she and Plaintiff took

10 a cruise to Panama in 2011. AR 837. The ALJ referred to this inconsistency as one reason for

11 discounting Mrs. Marrow's testimony. *See* AR 712. However, Plaintiff argues the ALJ's original

12 question only asked whether the Plaintiff traveled overseas for "activities and work" and, thus,

13 Mrs. Morrow's response was not inconsistent because the cruise was not an "activity" or "work."

14 *See* Dkt. 9, pg. 13.

15         The Court is not persuaded by Plaintiff's argument. When Mrs. Marrow testified Plaintiff

16 "doesn't travel overseas *at all*," it appears to the Court to mean just that. AR 830 (emphasis

17 added). At a minimum, the ALJ's interpretation is rational and to the extent the "evidence is

18 susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision.

19 *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881

20 F.2d 747, 750 (9th Cir. 1989)).

21         Furthermore, the ALJ listed several other reasons for discounting Mrs. Morrow's

22 testimony.  For example, the ALJ found Mrs. Morrow's testimony conflicted with the medical

23 evidence, Plaintiff's daily activities, and the Plaintiff's own testimony.  *See* AR 711-712 (noting

24

1  Plaintiff's performance on mental status testing, Plaintiff's ability to play golf one to two times

2  per week, and Plaintiff's testimony he shops for groceries and drives alone); *see also* AR 605,

3  674, 823, 830. These reasons are germane. *See Dewey v. Colvin*, No. 13-36086, 2016 WL

4  3018800, at *1 (9th Cir. May 26, 2016) ("inconsistency with Claimant's self-reported activities

5  of daily living was a specific and germane reason") (*citing Carmickle v. Comm'r, Soc. Sec.*

6  *Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)). *See also Lewis*, 236 F.3d at 511 ("One reason for

7  which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (*citing*

8  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)); *Bettis v. Colvin*, No. 15-35014, 2016

9  WL 1583642, at *1 (9th Cir. Apr. 20, 2016) (finding one germane reason was sufficient to

10  discredit lay witness) (*citing Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

11  2009)). Thus, the ALJ did not err.

12  　　　　　　　　2. *Colonel James Brix; Norman Erie M.D.; and Oliver Stalsbroten M.D.*

13  　　　　Plaintiff also argues the ALJ's reasoning for discounting Col. Brix, Dr. Erie, and Dr.

14  Stalsbroten's, testimony "does not rise to the level of being germane." Dkt. 9, pg. 13. The ALJ

15  found Col. Brix's opinion inconsistent with: (1) Plaintiff's memory and cognition during

16  appointments; and (2) Plaintiff's psychometric testing scores. *See* AR 713. The record

17  adequately supports the ALJ's conclusion. *See* AR 606, 672-676. As mentioned above, an ALJ

18  may discount lay witness testimony if it conflicts with medical evidence. *Lewis* 236 F.3d at 511.

19  Therefore, the Court finds the ALJ did not err when she accorded Col. Brix's opinion some

20  weight.

21  　　　　Next, the ALJ discounted Dr. Erie's opinion and referred back to the reasons given for

22  discounting Col. Brix's statement. AR 713. An ALJ need not discuss every witness' testimony

23  on an individualized basis; if the ALJ provides germane reasons for discounting one witness'

24

1   testimony then the ALJ may point to that reasoning for rejecting similar testimony of another

2   witness. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (*citing Valentine*, 574 F.3d at

3   694). Dr. Erie and Col. Brix provide similar statements that attest to Plaintiff's diminished

4   mental and physical capabilities. AR 964, 966. Thus, the ALJ was permitted to discount Dr.

5   Erie's testimony by referencing the reasons she gave for discounting Col. Brix's testimony and

6   did not err.

7          Finally, the ALJ provided a germane reason for discounting Dr. Stalsbroten's statement.

8   The ALJ assigned some weight to Dr. Stalsbroten's statement, but noted the overall evidence

9   indicates Plaintiff "retains physical ability to perform light work as well as simple and detailed

10   tasks." AR 713. While the ALJ does not specifically cite to the record, she notes in her decision

11   Plaintiff plays golf, has gone on two separate cruises requiring long-term flights, and drives three

12   to four times a week. AR 711; *see also* AR 736, 739-40, 823, 830, 834, 837, 865, 874. Even if

13   the ALJ did not clearly link her determination to those reasons, she noted arguably germane

14   reasons for discounting Dr. Stalsbroten's statement. *See Lewis*, 236 F.3d at 512.  Therefore, the

15   ALJ did not err in evaluating the lay witness testimony. [5]

16          IV.   <u>Whether the ALJ Erred by Finding Plaintiff Could Perform His Past Relevant</u>
              <u>Work, and Other Work Existing in Significant Numbers in the National Economy</u>
17

18          Defendant concedes the ALJ erred by finding Plaintiff was capable of performing his past

19   relevant work as a storage facility rental clerk, as that work is generally performed. Dkt. 13, p.

20   16. However, Defendant argues any error was harmless, as the ALJ proceeded on to Step Five,

21

22          [5] Even if the ALJ erred in failing to provide germane reasons for discounting Dr. Stalsbroten's
      testimony, Dr. Stalsbroten did not testify to any limitations different from those articulated by Plaintiff
23   himself. As discussed above, the ALJ properly discounted Plaintiff's testimony, and the ALJs reasons
      apply equally well to Dr. Stalsbroten's testimony. *See* Section II, *supra*. Thus, any error in the ALJ's
24   evaluation of Dr. Stalsbroten's witness statement was harmless. *See Molina v. Astrue*, 674 F.3d 1104,
      1117 (9th Cir. 2012).

1  and properly found Plaintiff was capable of performing work existing in significant numbers in

2  the national economy. Dkt. 13, p. 17. Plaintiff contends the ALJ did, in fact, err at Step Five by

3  finding Plaintiff had transferable skills which he would be able to use in performing other work.

4  The Court concludes the ALJ erred at Step Four by finding Plaintiff capable of performing his

5  past relevant work, but since the ALJ continued on to Step Five and cited substantial evidence to

6  support his finding Plaintiff was able to perform other work in the national economy, this error

7  was harmless.

8      **A. Standard**

9      If a claimant cannot perform his or her past relevant work, at Step Five of the disability

10  evaluation process the ALJ must show there are a significant number of jobs in the national

11  economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999);

12  20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a

13  vocational expert or by reference to defendant's Medical-Vocational Guidelines. *Osenbrock v.*

14  *Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

15      When a social security claimant's past relevant work was semi-skilled or skilled work,

16  and a claimant's severe impairments do not meet or equal the criteria in the Listing of

17  Impairments, the Social Security Administration must consider whether the claimant's skills are

18  transferable to other employment. *See* SSR 82-41, *available at* 1982 WL 31389, at *1-2.

19  Transferability means "applying work skills which a person has demonstrated in vocationally

20  relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.* at *2.

21      Transferability of skills is, in part, age-dependent. Under Social Security regulations,

22  when an individual is closely approaching retirement age and has a severe impairment which

23  limits them to no more than light work, the Social Security Administration "will find [the

24

claimant has] skills that are transferable to skilled or semiskilled light work only if the light work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4). *See also* SSR 82-41, *available at* 1982 WL 31389, at *5-*6. However, "[w]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC."   SSR 82-41, *available at* 1982 WL 31389, at *6.

### B.  Application of Standard

Prior to his stroke in October, 2008, Plaintiff was the owner and manager of a storage unit rental facility. *See* AR 35-39. At the February, 2014 hearing, Vocational Expert Roni Lenore testified an individual with Plaintiff's RFC would be able to perform the jobs of telephone solicitor, DOT 299.357-014, and automobile rental clerk, DOT 295.467-026. AR 749-50. In coming to this conclusion, Ms. Lenore found Plaintiff had the following transferable skills from his past relevant work: addressing customer issues and concerns; communicating effectively with customers from a variety of ethnic, social, and educational histories; expressing confidence in one's abilities; following up on customer contacts and complaints; getting information from many sources; organizing and maintaining information; participating as a member of a team; able to read invoices and pricing; and understanding personnel policies. AR 755. Ms. Lenore opined the two alternative jobs of telephone solicitor and automobile rental clerk had substantial overlapping skills, such as understanding others attitudes and meanings, addressing customers issues and concerns, organizing and maintaining information, and maintaining records. AR 756.

1    Ms. Lenore also opined the tools involved in performing the jobs were "pretty close" to

2    Plaintiff's past relevant work, and there were not significant differences in applying skills from

3    Plaintiff's past relevant work to these other positions. AR 751.

4          Plaintiff argues this testimony does not support a finding there would be "very little"

5    vocational adjustment from Plaintiff's past relevant work. *See* 20 C.F.R. § 404.1568(d)(4).

6    However, the transferable skills described by the Vocational Expert are precisely the sort of

7    "clerical, professional, administrative, or managerial" skills the Social Security Administration

8    has concluded are "universal[ly] applicab[le] across industry lines." SSR 82-41, *available at*

9    1982 WL 31389, at *6. Further, it is clear from Ms. Lenore's testimony that, in her opinion,

10   Plaintiff would require very little vocational adjustment to perform the job requirements of

11   telephone solicitor or automobile rental clerk. *See* AR 751 ("The telephone solicitor is quite

12   close, the automobile rental clerk would take a little adjustment but again the processes are—

13   overlap so much that given someone who can do SVP: 4 and handle complex and detailed tasks,

14   given the hypothetical it would seem appropriate."). *See also Bayliss*, 427 F.3d at 1217-18 (a

15   Vocational Expert's "recognized expertise provides the necessary foundation for his or her

16   testimony.").

17         Ms. Lenore's testimony is substantial evidence which supports the ALJ's finding Plaintiff

18   had transferable work skills, and could perform jobs which exist in significant numbers in the

19   national economy at Step Five. *See Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) (affirming

20   an ALJ's Step Five finding when the vocational expert presented evidence "which would support

21   a finding that there would be little, if any, vocational adjustment required in terms of work

22   processes, or job orientation in undertaking sedentary work in a variety of desk jobs). *See also*

23   *Anglin v. Massanari*, 18 Fed.Appx. 551, 553-54 (9th Cir. 2001).

24

1    Plaintiff also argues Ms. Lenore's testimony was predicated on an improper hypothetical,

2    as the ALJ did not include all of the limitations opined to by Dr. Talmadge in the RFC finding.

3    However, as discussed in Section I, above, the ALJ did not err in evaluating Dr. Talmadge's

4    opinion, and in fact incorporated all of the mild and moderate functional limitations Dr.

5    Talmadge identified into the RFC. Therefore, the ALJ's hypothetical to Ms. Lenore was not in

6    error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

7    Plaintiff has failed to demonstrate how Ms. Lenore's testimony concerning Plaintiff's

8    transferable work skills was error. Therefore, the ALJ's findings at Step Five should be affirmed.

9    ## CONCLUSION

10    Based on the above stated reasons and the relevant record, the undersigned finds the

11    ALJ's conclusion Plaintiff was not disabled was supported by substantial evidence and was not

12    legally erroneous. Therefore, the Court orders this matter be affirmed pursuant to sentence four

13    of 42 U.S.C. § 405(g). Judgment should be for Defendant and the case should be closed.

14    Dated this 8th day of August, 2016.

15

16    David W. Christel
      United States Magistrate Judge

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 28